UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK OF THE FAMILY GONORA,<br><br>Plaintiff,<br><br>v.<br><br>PATRICIA RISCH,<br><br>Defendant. | Civil Action No. 23-893 (RK) (TJB)<br><br>**OPINION** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant Patricia Risch, Director of the Office of Child Support Services ("OCSS") for the State of New Jersey ("Defendant"). (ECF No. 9.) The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED**.

    I.    **FACTUAL BACKGROUND**

    Plaintiff, who is *pro se*, identifies himself as "Frederick of the Family Gonora, a Free man defined under the [New Jersey] Constitution Article I section I as free and independent, and hav[ing] certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness . . . ." (Complaint, ECF No. 1 ("Compl.") at *1.) Plaintiff's Complaint is difficult to construe. It appears that he has been the subject of various child support judgment orders from March 18, 2016 through the present, resulting in ongoing garnishment proceedings in

Monmouth County. (*Id.* at *7–10.) Plaintiff alleges that he has been subjected to ninety-six (96) "counts" of unlawful taking pursuant to Income Withholding Orders ("IWO's") from the Monmouth County Probation Unit, resulting in garnishments of $180.00 monthly from Plaintiff's earned income, to satisfy various alleged arrears. (*Id.* at *7–8.) Plaintiff also alleges that he was forced to "pay a third party or face arrest and indefinite incarceration if 2 monthly payments are missed," that his economic stimulus funds were seized in April, 2020, and that his passport was revoked in November, 2022 when the alleged arrears were reported. (*Id.* at *8, 11.)

Plaintiff alleges that the Monmouth County judges lacked jurisdiction to impose these orders. (*Id.* at *7.) He alleges that OCSS, who is responsible for the administration of the Child Support Program in New Jersey,[1] enters into "Cooperative Agreements with entities including [t]he New Jersey Judiciary's Administrative Office of the Courts ["AOC"] and the respective components of the judicial districts, namely, the Family Division, the Probation Division (Child Support)[,] and the Finance Division to carry out [its] responsibilities . . . ."[2] Plaintiff further states that Article VI, Section VI, paragraph 7 of the New Jersey Constitution forbids Superior Court Judges from holding other offices or positions of profit.[3] Plaintiff appears to be alleging that the Monmouth County judges who issued the child support judgment orders lacked jurisdiction because, by entering into a Cooperative Agreement with OCSS, they acted as employees of OCSS in violation of Article VI of the New Jersey Constitution. Plaintiff thus argues that the child support orders are "invalid non judicial orders" which violate his civil rights and are therefore "null and

---

[1] 42 U.S.C. 654.3 provides requirements for the States' plans for child and spousal support.

[2] N.J.A.C. § 10:110-2.1 provides that "[t]he Department [of Human Services] may enter into cooperative agreements with public entities in accordance with 45 C.F.R. 302.34 and contracts with private entities for the purpose of carrying out the responsibilities granted to the Division's OCSS . . . ."

[3] Article VI, Section VI, paragraph 7 provides that "the Judges of the Superior Court shall hold no other office or position, of profit, under this State or the United States."

void." (*Id.* at *7, *12.) Plaintiff also alleges that OCCS is responsible for monitoring the activities of the AOC included in the Cooperative Agreement.[4] (*Id.* at *5.) Plaintiff contends that Defendant, as Director of OCSS, "fail[ed] to monitor violations of Constitutional rights by AOC." (*Id.* at *12.)

Plaintiff brings an involuntary servitude claim under the Thirteenth Amendment and claims under the due process and equal protection clauses of the Fourteenth Amendment based on Section 1983, as well as a claim under the bill of attainder clause. (*Id.* at *7–11, 19.) Plaintiff asks the Court to "remove the Alleged Arrears," close the family court matter in Monmouth County "with a Zero dollar amount in arrears," order a "refund of all property unlawfully taken by [the income withholding orders]" in the family court matter in Monmouth County "from March 18, 2016 to Present day," and order an "accounting for 12% interest on property taken since March 18, 2016." (*Id.* at *18). Plaintiff also seek punitive damages and court costs. (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff filed this action on February 16, 2023. (Compl.) On March 17, 2023, Defendant requested an extension of time to respond to the Complaint. (ECF No. 5.) That same day, Plaintiff filed a Request for Default, which was denied by the Clerk of Court given that Defendant had entered an appearance. (ECF No. 6.) On March 22, 2023, Plaintiff filed a Motion to Disqualify the New Jersey Office of the Attorney General as defense counsel. (ECF No. 7.) This motion was denied by the Honorable Rukhsanah Singh. (ECF No. 17.) On April 3, 2023, Defendant moved to dismiss Plaintiff's Complaint. (ECF No. 9.)[5] On May 22, 2023, Plaintiff filed a Motion for

---

[4] N.J.A.C. § 10:110-3.4 provides that "OCSS shall be shall be responsible for monitoring the activities included in the Cooperative Agreement between the [Probation] Division and AOC . . . ."

[5] Thereafter, Plaintiff also filed a "Statement of Claim" purportedly brought under Federal Rule of Civil Procedure 8(a). (ECF No. 12.) Rule 8(a) requires a "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a); *see generally* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (explaining the federal pleading requirements). The rule provides the standards for pleading a cause

3

Discovery, (ECF No. 18), and on July 12, 2023, Plaintiff filed a Motion for Summary Judgment, (ECF No. 21).[6] On August 2, 2023, this Court administratively terminated Plaintiff's Motion for Summary Judgment pending resolution of Defendant's Motion to Dismiss, (ECF No. 24), and on September 5, 2023, Magistrate Judge Singh denied Plaintiff's Motion for Discovery, finding good cause to stay discovery also pending resolution of the Motion to Dismiss, (ECF No. 25).

Now pending before the Court is Defendant's Motion to Dismiss brought under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 9.) Defendant raises several arguments for dismissal. First, because Plaintiff seeks damages from actions that occurred beginning March 18, 2016, yet only filed his Complaint in February 2023, many of Plaintiff's claims are barred by the applicable two-year statute of limitations. (*Id.* at 1.) Second, this Court should not exercise jurisdiction over Plaintiff's Complaint based on the *Younger* and *Rooker-Feldman* doctrines. (*Id.* at 1–2.) Third, Plaintiff's Complaint sets forth no allegations that could establish a Thirteenth Amendment claim. Fourth, any claims arising from Defendant's compliance with a court order for garnishment fail because Defendant is protected by quasi-judicial immunity. Fifth, Plaintiff's claims under the doctrine of *respondeat superior* fail because Plaintiff does not allege any personal involvement on the part of Defendant. (*Id.* at 2–3.) Finally, Plaintiff's claims are barred by the doctrine of qualified

---

of action in federal court; nothing in the rule provides an independent basis to submit a filing in addition to a complaint. Thus, Plaintiff subsequent "Statement of Claim" will not be considered by the Court.

[6] Plaintiff also filed a "Request to Take Judicial Notice" of the "the facts of his constitutional deprivations by the Defendant"—namely, that the Cooperative Agreement between Defendant and the New Jersey judiciary violates the Separation of Powers doctrine. (ECF No. 15.) "A court may take judicial notice of facts that are not subject to reasonable dispute because they are either 'generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020) (quoting Federal Rule of Civil Procedure 201(b)(2)). Defendant's alleged violation of Plaintiff's Constitutional rights is subject to reasonable dispute; indeed, the issue is central to the Court's adjudication of this matter and thus may not be judicially noticed.

immunity. (*Id.* at 3.) On April 24, 2023, Plaintiff filed a brief in opposition, (ECF No. 11), and on May 8, 2023, Defendant filed a reply, (ECF No. 13).[7]

### III. LEGAL STANDARDS

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). It is well established that a *pro se* complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). The

---

[7] Plaintiff argues in his brief in opposition that Defendant's Motion to Dismiss should be treated as a motion for summary judgment. (ECF No. 11 at *8.) Plaintiff then argues that, because Defendant's motion was "unsupported by affidavits or depositions," it is somehow "[i]ncomplete." (*Id.*) In reviewing a 12(b)(6) motion, a court should generally only consider facts alleged in the pleadings, documents attached thereto, and matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). "If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion . . . ." *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, 582 F. Supp. 3d 199, 203 (D.N.J. 2022). The only attachments to Defendant's Motion to Dismiss are Plaintiff's Complaint, the certification of counsel and certificate of service, and a proposed order. Such matters do not convert Defendant's motion to a summary judgment motion, and thus, the Court considers the motion under the standards of Rule 12(b)(6).

Court is obligated to construe *pro se* claims liberally and afford *pro se* plaintiffs the benefit of every doubt. *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005).

## IV. DISCUSSION

Because jurisdiction is the threshold issue in this case, the Court will first consider the Court's jurisdiction over Plaintiff's claims. A federal district court's duty to exercise its jurisdiction conferred by Congress is "virtually unflagging." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). There are limited circumstances, however, where a court may or must abstain from exercising its jurisdiction.

### a. *Younger* Abstention Doctrine

Abstention from the exercise of jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), is rooted in "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).[8] Federal courts may abstain from exercising jurisdiction under the *Younger* abstention doctrine in three categories of proceedings: "(1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings; and (3) pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013)) (quotations and additional citations omitted). If a court finds that the subject proceeding fits one of the above categories, the court must

---

[8] "Strictly speaking, *Younger* abstention is not analyzed under either Rule 12(b)(1) or 12(b)(6)." *Yarborough v. Johnson*, No. 18-2688, 2018 WL 6567701, at *1 (D.N.J. Dec. 12, 2018) (quoting *Knox v. Union Twp. Bd. of Educ.*, No. 13-5875, 2015 WL 769930, at *5 n.7 (D.N.J. Feb. 23, 2015)). That said, "[d]ismissal on abstention grounds without retention of jurisdiction is in the nature of a dismissal under Fed. R. Civ. P. 12(b)(6)." *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1206 n.18 (3d Cir. 1992). Accordingly, "courts in this District have treated [a motion to dismiss on the basis of] *Younger* abstention as a Rule 12(b)(6) motion to dismiss . . . in that matters outside of the pleadings are not to be considered." *Yarborough*, 2018 WL 6567701, at *1.

then consider the additional *Middlesex* factors: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Id.* (citing *Sprint*, 571 U.S. at 81–82 and *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 423).

Plaintiff's claims appear to pertain to ongoing garnishment proceedings. Plaintiff alleges that the Monmouth County Probation unit has been unlawfully withholding $180.00 monthly from Plaintiff's earned income "starting from March 18, 2016 *to Present day.*" (Compl. at *7, 10 (emphasis added).) Plaintiff also alleges that the proceeding "has not ended or reached final conclusion" and asks the Court to remove the arrears currently imposed on him and close the case. (*Id.* at *15, *17.)

Courts in this Circuit have overwhelmingly abstained under the *Younger* doctrine when faced with challenges to ongoing child support proceedings. *See, e.g.*, *Gittens v. Kelly*, 790 F. App'x 439, 441 (3d Cir. 2019) (per curiam) ("To the extent that the state court proceeding regarding [plaintiff's] child support obligations were ongoing, the District Court properly invoked the *Younger* abstention doctrine."); *Dixon In re Burrell*, 626 F. App'x 33, 35 (3d Cir. 2015) (denying petition for writ of mandamus because "[f]ederal courts usually abstain from deciding civil actions such as [plaintiff's] where state child support proceedings implicate important state interests, and the state proceedings provide an adequate opportunity to raise claims."); *DiPietro v. New Jersey Fam. Support Payment Ctr.*, 375 F. App'x 202, 205 (3d Cir. 2010) ("The District Court correctly found that the requirements for abstention are met" in a case challenging ongoing child support obligations); *Dixon v. Kuhn*, 257 F. App'x 553, 556 (3d Cir. 2007) (same); *see also Dormevil v. Domestic Rels. Off. Delaware Cnty. Pennsylvania Child Support Agency*, No. 23-3025, 2023 WL 6144845, at *4 (E.D. Pa. Sept. 20, 2023) (abstaining under *Younger* in a challenge

7

to child support proceedings); *Kastler of the Fam. Joseph v. Washington Cnty. Domestic Rels. Unit*, No. 19-00781, 2020 WL 429124, at *5 (W.D. Pa. Jan. 28, 2020) (same); *Ridinger v. Williams*, No. 18-1922, 2020 WL 374837, at *1 n.1 (D. Del. Jan. 23, 2020) ("To the extent that state court proceedings are pending or ongoing in [plaintiff's] child support matter, the *Younger* abstention doctrine applies."); *Spageage Consulting Corp. v. Porrino*, No. 17-6299, 2018 WL 1169133, at *3 (D.N.J. Mar. 6, 2018) ("The State Garnishment Order was issued as part of a matrimonial, child custody, and child support dispute . . . that is ongoing in New Jersey state court. Thus, this Court's intervention . . . is barred by the *Younger* abstention doctrine."); *Sheils v. Bucks Cnty. Domestic Rels. Section*, 921 F. Supp. 2d 396, 410 (E.D. Pa. 2013) (abstaining under *Younger* from considering claims pertaining to ongoing child support proceedings). *But see Pittman v. Grewal*, No. 20-06696, 2022 WL 489459, at *1 (D.N.J. Feb. 17, 2022) (finding that abstention under *Younger* was not appropriate in a challenge to a child support order), *aff'd sub nom. LoPresti v. Johnson*, No. 22-1435, 2023 WL 6890732 (3d Cir. Oct. 19, 2023) (affirming the district court on other grounds).

The Court finds that Plaintiff's ongoing garnishment proceeding fits into the third category of cases wherein courts should abstain under *Younger*: pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. *See Dormevil*, 2023 WL 6144845, at *4 ("Child support cases fall squarely in the third category of exceptional cases."); *see also Shallenberger v. Allegheny Cnty.*, No. 20-00073, 2020 WL 1465853, at *7 (W.D. Pa. Mar. 26, 2020) (noting that Courts in the Third Circuit have "repeatedly held" that child-custody cases fit squarely into the third category of cases).[9] Indeed, Plaintiff appears to be

---

[9] The case at bar is distinguishable from *Malhan* wherein the Third Circuit held that a state agency's disclosure of the plaintiff's bank records and administrative levy on his bank account and a state court order refusing to allow the plaintiff to file counterclaims and offsets to his child support debt were not orders uniquely in furtherance of the state court's ability to perform its judicial function under category three. 983

challenging a number of orders issued by the family court in the garnishment proceedings that "ensure that the family courts can perform their functions," such as the revocation of his passport and the threat of incarceration, which are similar to the examples given in *Malhan*, such as civil contempt orders, that the Court determined would uniquely further the state court's judicial function. 938 F.3d at 463.

Having determined that the matter falls into one of the requisite categories, the Court turns to the *Middlesex* factors and finds that each factor militates in favor of abstention. Beginning with the first factor, the Court find that there are ongoing state proceedings that are judicial in nature. "State proceedings are pending only if they are initiated before any proceedings of substance on the merits have taken place in federal court." *Malhan*, 938 F.3d at 464. As noted above, the Complaint alleges the existence of a state court proceeding that was initiated at least as early as March 18, 2016 and appears to be ongoing. (*See* Compl. at *7, 10 (complaining of income withholding orders that "starting from March 18, 2016 *to Present day*." (emphasis added)); id. at *15 (alleging that the proceeding "has not ended or reached final conclusion")); *see also DiPietro*, 375 Fed. App'x at 204 (finding that child support proceedings are ongoing because "New Jersey courts are charged with monitoring, enforcing, and modifying child support obligations throughout the duration of a child support order" (citing *Anthony v. Council*, 316 F.3d 412, 420 (3d Cir. 2003)); *Yarborough*, 2018 WL 6567701, at *2 (finding that child support obligations constitute ongoing state proceedings (citing *Anthony*, 316 F.3d at 420)).[10]

---

F.3d at 463. The *Malhan* Court expressly declined to determine whether family court garnishment orders fit into this third category because the state had ceased garnishing the plaintiff's wages, vacated its garnishment order, and had not issued another—thus there were no pending garnishment proceedings. 938 F.3d at 463–65. The *Malhan* Court also pointed out that the plaintiff was not trying to "annul the results of a past garnishment." *Id.* at 465. Not so here. In this case, Plaintiff undoubtedly seeks to both terminate an ongoing garnishment proceeding and annul the results of past garnishment orders.

[10] In *Anthony v. Council*, the Third Circuit explained that a person under a New Jersey state-court child support obligation "is party to an open case that will not terminate until the child support order is finally

9

Turning to the second factor, the Third Circuit has held that "there is no question that state child support proceedings implicate important state interests." *DiPietro*, 375 Fed. App'x at 205; *see also Moore v. Sims*, 442 U.S. 415, 435 (1979) ("[f]amily relations are a traditional area of state concern"). Finally, with respect to the third factor, there is a presumption that state courts are equally competent and willing to hear federal statutory and constitutional claims. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987). Plaintiff has failed to demonstrate any obstacle to raising his present grievances in state court, and thus there is no basis to conclude that Plaintiff would not be afforded adequate opportunity to raise his claims in state court. *See DiPietro*, 375 Fed. App'x at 205 (finding that plaintiff challenging child support obligations was "able to raise his claims in state court and to appeal adverse decisions through the state appellate system and to the United States Supreme Court."). Accordingly, *Younger* abstention applies,[11] and the Court declines to exercise jurisdiction over Plaintiff's challenges to the ongoing garnishment proceedings.[12]

---

discharged." 316 F.3d 412, 420 (3d Cir. 2003). While the Third Circuit noted in a footnote in *Malhan* that *Anthony* was abrogated by the Supreme Court's opinion in *Sprint* because *Anthony* only applies the *Middlesex* factors without first determining whether the state court action fit into one of the three categories recognized in *Sprint*, *see Malhan*, 938 F.3d at 462 n.4, nothing in *Sprint* affected *Anthony*'s description of state-court child support obligations. Indeed, the Third Circuit has, in a post-*Malhan* opinion, cited *Anthony* for the proposition that "abstention was proper where persons held in civil contempt for failing to comply with their child support orders alleged violations of their due process rights." *Gittens*, 790 F. App'x at 441.

[11] The Court also notes that Plaintiff previously filed a separate case in federal court against OCSS and various Monmouth County defendants challenging their establishment of his paternity which he alleged deprived him of his Constitutional rights. *Gonora v. Off. of Child Support Servs.*, No. 18-3793, 2019 WL 13271888 (D.N.J. Mar. 21, 2019), *aff'd sub nom. Frederick of Fam. Gonora v. Off. of Child Support Servs.*, 783 F. App'x 250 (3d Cir. 2019). The District Court dismissed Plaintiff's case with prejudice based on the *Younger* abstention doctrine. *Id.* at *3. Plaintiff appealed, and the district court's decision was affirmed by the Third Circuit. *Frederick of Fam. Gonora v. Off. of Child Support Servs.*, 783 F. App'x 250, 252–53 (3d Cir. 2019).

[12] Defendant argues that the Court is also barred from exercising jurisdiction under the *Rooker-Feldman* doctrine. (ECF No. 9 at 10–11.) In *Malhan*, the Third Circuit cautioned that *Rooker-Feldman* "does not apply when state proceedings have neither ended nor led to orders reviewable by the United States Supreme Court." 938 F.3d at 460. Rather, federal courts are only barred from exercising jurisdiction when (1) the state court of last resort has affirmed the judgment; (2) the time to appeal has expired or the parties voluntarily terminated litigation; or (3) the state court has resolved all federal issues even when state law or factual issues remain. *Id.* at 459–60; *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (*Rooker-Feldman* applies when "the losing party in state court filed suit in federal court

### b. Failure to State a Claim

Even if the Court were to exercise jurisdiction over this case, the Court nonetheless finds that Plaintiff's claims against Defendant fail for three reasons: (1) Defendant is immune from suit based on the doctrine of quasi-judicial immunity; (2) Plaintiff may not state claims under Section 1983 based on a theory of *respondeat superior*; and (3) Plaintiff fails to state a bill of attainder claim.

Turning first to Defendant's immunity from suit: the doctrine of quasi-judicial immunity "evolved out of its well-known namesake, judicial immunity," which protects judges from liability for damages for acts committed within their judicial jurisdiction. *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018). The fair administration of justice depends not only on judges, however. *Id*. Thus, the immunity doctrine has been extended to "certain others who perform functions closely associated with the judicial process," *id.* (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), including "those who serve as arms of the court, . . . fulfill[ing] a quasi-judicial role at the court's request," *id.* (quoting *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001) (quotation marks omitted). The Third Circuit has explained that quasi-judicial immunity "extends to the acts authorized by court order, i.e., to the execution of a court order," but not to the manner in which a court order is executed. *Id.* at 250.

Plaintiff alleges vaguely that Defendant "is the master liable for the OCSS's actions, including failing to monitor violations of Constitutional rights by AOC." (Compl. at *12.) To the

---

after the state proceedings ended"). Thus, in *Malhan*, the Court concluded that interlocutory orders in child support proceedings, such as garnishment orders, were not final judgments within the meaning of the *Rooker-Feldman* doctrine. 938 F.3d at 461. It is difficult to discern from Plaintiff's Complaint whether he is challenging final judgments in child support proceedings that have ended. A cogent argument can be made that, by challenging a judgment for $251,387.02 from 2016 and judgments for a total of $163,494.56 from 2022, (Compl. at *7), Plaintiff is attempting to challenge final judgments from closed proceedings. To the extent that Plaintiff is attempting to challenge such judgments, the Court would be barred from exercising jurisdiction under *Rooker-Feldman*.

extent that Plaintiff attempts to hold Defendant liable for OCSS's role in executing court orders pertaining to Plaintiff's garnishment proceedings, those claims are barred by the doctrine of quasi-judicial immunity. *See Dormevil*, 2023 WL 6144845, at *6 (finding that the director and officers of the office of domestic relations were entitled to quasi-judicial immunity for their actions in connection with child support proceedings).

Moreover, to the extent that Plaintiff brings claims against Defendant unrelated to her alleged execution of court orders, Plaintiff's claims still fail because liability under Section 1983 generally cannot rest on a theory of *respondeat superior*. *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Rather, a plaintiff seeking to bring claims based on constitutional violations under Section 1983 must demonstrate that the defendant had personal involvement in the alleged wrongs. *Id.*; *see also Murphy v. Middlesex Cnty.*, 361 F. Supp. 3d 376, 387 (D.N.J. 2019). Accordingly, there are two potential theories of supervisory liability for Section 1983 claims: (1) that the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; or (2) that the supervisor "with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm." *A.M. ex rel J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Plaintiff expressly states in his Complaint that he is bringing his claims "[u]nder the Respondeat Superior doctrine." (Compl. at 12.) He appears to be attempting to hold Defendant liable for the AOC's alleged violations of the Thirteenth and Fourteenth Amendment. Plaintiff fails to allege that Defendant personally participated in violating his constitutional rights or, as Director of OCSS, had supervisory authority over employees of the AOC, or established a policy,

custom, or practice that directly caused Plaintiff's alleged constitutional harms. Thus, Plaintiff's *respondeat superior* liability claims against Defendant fail.

Finally, the Court briefly notes that Plaintiff's attempt to bring a claim against Defendant based on the bill of attainder clause also clearly fails. A bill of attainder is a legislative act which inflicts punishment without a judicial trial. *Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 468 (1977). The garnishment proceeding challenged by Plaintiff does not constitute a legislative act. *See, e.g.*, *Stanko v. Obama*, 434 F. App'x 63, 66 (3d Cir. 2011) (finding that a prisoner's argument that his disciplinary hearing constituted an unlawful bill of attainder was a "non-starter" because it is not a legislative act). Having found that Plaintiff's Thirteenth and Fourteenth Amendment and bill of attainder claims fail, the Court finds dismissal appropriate and finds it unnecessary to address Defendant's remaining arguments.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiffs' Complaint is hereby **DISMISSED** with prejudice. An appropriate Order accompanies this Opinion.

                                                       _____
                                                      **ROBERT KIRSCH**
                                                      **UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: November 30, 2023